# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2029

_____

Heather Hemmingsen,

    Plaintiff - Appellant,

v.

Messerli & Kramer, P.A.,

    Defendant - Appellee,

Appeal from the United States
District Court for the
District of Minnesota.

_____

Submitted:  December 15, 2011
Filed:  March 16, 2012

_____

Before LOKEN, BRIGHT, and SHEPHERD, Circuit Judges.

_____

LOKEN, Circuit Judge.

George Hemmingsen opened a Discover Bank credit card account in September 2002 and married Heather Hemmingsen one month later (for clarity, we will refer to the couple as George and Ms. Hemmingsen).  Discover wrote off the account in April 2007 and retained Messerli & Kramer (M&K), a Minnesota law firm, to recover the unpaid balance.  M&K commenced a collection action against George and Ms. Hemmingsen in state court.  The state court granted summary judgment to Ms. Hemmingsen when Discover failed to overcome her testimony that she never asked to be on the account, never agreed to pay on the account, and never used or benefitted from it.

Ms. Hemmingsen then commenced this action in federal court alleging that M&K violated multiple provisions of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692d-f, by making false statements and misrepresentations in a memorandum filed in the state court action in support of Discover's motion for summary judgment. The Complaint also asserted state law claims for malicious prosecution, abuse of process, and the recovery of treble damages for attorney deceit under Minn. Stat. § 481.071. Ms. Hemmingsen appeals the district court's[1] grant of summary judgment dismissing these claims. We review the grant of summary judgment *de novo* and may affirm on any basis supported by the record. Green Tree Servicing, LLC v. DBSI Landmark Towers, LLC, 652 F.3d 910, 913 (8th Cir. 2011). We affirm but on a different ground as to one of the FDCPA claims.

## I. Background

George added Ms. Hemmingsen to the account by calling Discover in November 2002. Thereafter, the monthly statements identified it as a joint account. Minimal payments were made in mid-2003 as the unpaid balance grew. George and Ms. Hemmingsen divorced in 2005. Their Marital Termination Agreement, completed and signed by Ms. Hemmingsen under oath and incorporated in the dissolution judgment, listed the Discover account and recited that both parties owed Discover $3,286.17 for debt incurred for "Living Expenses," and that George was responsible for the debt and would hold Ms. Hemmingsen harmless for the liability.

M&K commenced a state court action to recover the unpaid balance of $4,322.92 by serving George in September 2007. The complaint asserted alternative claims for breach of contract and for an action on an account stated. After obtaining a default judgment against George, M&K served Ms. Hemmingsen with the complaint

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

in February 2008. She retained counsel who filed an answer denying the claims and asserting that George "is solely responsible for any debt owed." The parties conducted document discovery but took no depositions. In response to M&K interrogatories and admission requests, Ms. Hemmingsen denied applying for or opening the account, making charges or payments on the account, or receiving the benefits of account purchases. Defense counsel requested that Discover "produce any documents bearing my client's signature." M&K produced none.

Both sides moved for summary judgment. M&K's Memorandum in Support alleged, in the portions here at issue, that Ms. Hemmingsen assented to the terms of the account agreement by accepting and using the card for purchases or cash advances, received account statements and made partial payments, and acknowledged the account was jointly held with an unpaid balance (the last being an accurate description of the Marital Termination Agreement). These allegations were supported by an affidavit prepared by M&K, signed by Discover's custodian of records, and averring that George and Ms. Hemmingsen "applied for and were issued a consumer credit card," "used or authorized others to use the Account to purchase goods and services," received monthly statements but failed to make the required minimum monthly payments, and never disputed any portion of the account.

The Memorandum in Support of Ms. Hemmingsen's cross motion for summary judgment alleged that Discover produced no evidence showing that a contract or account existed between Discover and Ms. Hemmingsen, or that she had been unjustly enriched. These allegations were supported by Ms. Hemmingsen's affidavit averring that she never resided at the address shown on the account statements (where George lived when he applied for the account, before their marriage); never applied for or received a credit card, made charges on the account, or received account billing statements; and never "agreed to pay or otherwise be responsible for the debt owed." Based on these averrals, the state court granted Ms. Hemmingsen summary judgment because there was no evidence she ever agreed to the terms of the account or

benefitted from use of the credit card, and because George was responsible for the debt under the terms of the divorce decree. This lawsuit followed. After the Complaint was served, Discover accessed its Check Image Retrieval records and discovered a twenty-dollar payment on the account in May 2003 made by a check written on the couple's joint account, payable to Discover, signed by Ms. Hemmingsen, and referencing the credit card account number on the memo line. Ms. Hemmingsen did not recall but acknowledged the check in a subsequent deposition.[2]

## II. The FDCPA Claims

Enacted "to eliminate abusive debt collection practices," the FDCPA "imposes civil liability on 'debt collector[s]' for certain prohibited debt collection practices." Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 130 S. Ct. 1605, 1608 (2010). Ms. Hemmingsen alleges that M&K violated the following prohibitions set forth in 15 U.S.C. §§ 1692d, 1692e and 1692e(10), and 1692f:

### § 1692d. Harassment or abuse

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. . . .

---

[2]We discerned this timing only by studying the retrieved photocopy, as counsel for both parties failed to address, either in the district court or on appeal, when this evidence that Ms. Hemmingsen made a payment on the account was discovered. Although the merits of the state court ruling are not at issue, that evidence could have been of importance in the state court litigation. More relevant here, discovery of this significant additional evidence after the parties litigated cross motions for summary judgment illustrates the possible error in assuming that assertions a party makes but cannot adequately support at the summary judgment stage are "false" or "baseless."

-4-

**§ 1692e.  False or misleading representations**

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

\*    \*    \*    \*    \*

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt . . . .

**§ 1692f.  Unfair practices**

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. . . .

Ms. Hemmingsen's counsel acknowledged at oral argument that all her § 1692 claims are based upon the same conduct, namely, M&K drafting and filing in state court the summary judgment motion memorandum and supporting affidavit.

As initially enacted, the FDCPA exempted "any attorney-at-law collecting a debt . . . in the name of a client" from the statutory definition of debt collector.  Pub. L. 95-109, § 803(6)(F), 91 Stat. 874, 875 (1977).  In 1986, reacting to the explosion of law firms conducting debt collection businesses, Congress repealed the exemption. Pub. L. 99-361, 100 Stat. 768; see H.R. Rep. 99-405, reprinted in 1986 U.S.C.C.A.N. 1752.  In Heintz v. Jenkins, 514 U.S. 291, 299 (1995), the Supreme Court held "that the Act applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation."  Therefore, the parties agree, M&K is a "debt collector" for purposes of the FDCPA.  See 15 U.S.C. § 1692a(6).

Heintz answered the question whether the FDCPA applies to a lawyer who regularly collects consumer debts through litigation. But the circuit courts have struggled to define the extent to which a debt collection lawyer's representations to the consumer's attorney or in court filings during the course of debt collection litigation can violate §§ 1692d-f. See, e.g., O'Rourke v. Palisades Acquisition XVI, LLC, 635 F.3d 938, 944 (7th Cir. 2011), cert. denied, 181 L. Ed. 2d 1017 (2012); Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1031-33 (9th Cir. 2010); Miller v. Javitch, Block & Rathbone, 561 F.3d 588, 593-94 (6th Cir. 2009); Evory v. RJM Acquisitions Funding LLC, 505 F.3d 769, 774-75 (7th Cir. 2007); Sayyed v. Wolpoff & Abramson, 485 F.3d 226, 234 (4th Cir. 2007). The difficulties are not surprising because, as the Supreme Court explained in Heintz, Congress in repealing the lawyer exemption did not modify the FDCPA's "conduct-regulating provisions," which may create anomalies demonstrating a need for "additional, implicit, exception[s]" to implement "the statute's apparent objective of preserving creditors' judicial remedies." 514 U.S. at 296-97; see Jerman, 130 S. Ct. at 1622 ("those [conduct-regulating] provisions should not be assumed to compel absurd results when applied to debt collecting attorneys").

We have not directly addressed these issues. Cf. Richmond v. Higgins, 435 F.3d 825, 828 (8th Cir.), cert. denied, 549 U.S. 884 (2006). But we did decide in Volden v. Innovative Financial Systems, Inc., 440 F.3d 947, 954 (8th Cir. 2006), a factually complex case, that the defendant's misrepresentation to a third party, in collecting a dishonored check debt using an automated clearing house procedure, was not actionable under § 1692e because it was not "a false, deceptive, or misleading representation *to the plaintiff*," the consumer who wrote the dishonored checks. Though Volden did not involve alleged false statements during litigation, the district court, not unreasonably, construed Volden as deciding that a false representation to any third party does not violate the FDCPA "when no false representation was made directly to the plaintiff." The court therefore dismissed Ms. Hemmingsen's § 1692e

claims because M&K made allegedly false representations only to the state court judge. The court dismissed the § 1692d and § 1692f claims because the divorce decree "tied" Ms. Hemmingsen to the debt sufficiently to defeat allegations that M&K used abusive, unfair, or unconscionable means of debt collection.

We are unwilling to adopt the district court's broad ruling that false statements not made directly to a consumer debtor are never actionable under § 1692e. No other court has read the statute that narrowly. Debt collector lawyers make representations to debtors' attorneys or in debt collection pleadings in a wide variety of situations. Though rarely made "directly" to the consumer debtor, such representations routinely come to the consumer's attention and may affect his or her defense of a collection claim. To take an obvious example, a § 1692e complaint alleging that the defendant debt collector lawyer routinely files collection complaints containing intentionally false assertions of the amount owed, serves the complaints on unrepresented consumers, and then dismisses any complaint that is not defaulted would raise far different issues of abusive, deceptive, or unfair means of debt collection than this case. Cf. McCollough v. Johnson, Rodenburg & Lauinger, LLC, 637 F.3d 939, 947 (9th Cir. 2011). We conclude that the diverse situations in which potential FDCPA claims may arise during the course of litigation, and the Supreme Court's caution in Heintz that careful crafting may be required in applying the statute's prohibitions to attorneys engaged in litigation, counsel against anything other than a case-by-case approach, at least in this, our first case requiring us to address these issues.

In this case, we deal only with alleged false statements in summary judgment pleadings filed long after a debt collection lawsuit began for the purpose of persuading the state court to grant relief. The summary judgment memorandum and affidavit asserted nothing that Ms. Hemmingsen's attorneys did not already know about Discover's legal position. Ms. Hemmingsen's attorneys continued their vigorous defense of the collection action by filing a successful cross motion for summary

judgment that reiterated her position. The state court judge obviously was not misled or even persuaded by M&K's summary judgment pleadings, as it granted summary judgment in Ms. Hemmingsen's favor. Neither Ms. Hemmingsen nor her attorneys took any action in reliance upon the accuracy of M&K's fact representations. Indeed, the only financial injury Ms. Hemmingsen now alleges is incurring attorney's fees to prevail in the state court litigation. Yet the state court denied Ms. Hemmingsen's prayer for a fee award in that action, and review of counsel's time sheets suggests that a considerable amount of the time claimed was spent preparing to commence this FDCPA lawsuit.

In these circumstances, we have no difficulty affirming the dismissal of these FDCPA claims on the merits. It was not false or misleading to submit a client affidavit and legal memorandum arguing M&K's legal position that Ms. Hemmingsen was liable for the unpaid account balance, even if George was the only one who used the credit card and made partial payments on the account, when Discover's records reflected that George submitted the initial application, added Ms. Hemmingsen to the account by phone, neither spouse questioned statements identifying it as a joint account, partial payments were made by checks from a joint account, and a Marital Termination Agreement signed by Ms. Hemmingsen listed it as a joint obligation for the couple's "living expenses." The fact that a state court judge rejected the contention, unaware that Ms. Hemmingsen had personally made at least one payment on the account, does not prove that those assertions were false or misleading for purposes of § 1692e. Nor has Ms. Hemmingsen produced any evidence showing that the state court judge -- or anyone else -- "was misled, deceived, or otherwise duped" by M&K's pleadings. O'Rourke, 635 F.3d at 945 (Tinder, J., concurring).

The rule Ms. Hemmingsen urges -- that a debt collector's fact allegations are false and misleading for purposes of § 1692e when rejected as not adequately supported in the collection suit -- would be contrary to the FDCPA's "apparent

objective of preserving creditors' judicial remedies," Heintz, 514 U.S. at 296, an objective consistent with the principle "that the right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983). If judicial proceedings are to accurately resolve factual disputes, a lawyer "must be permitted to call witnesses without fear of being sued if the witness is disbelieved and it is alleged that the lawyer knew or should have known that the witness' testimony was false." Imbler v. Pachtman, 424 U.S. 409, 439 (1976) (White, J., concurring). Judges have ample power to award attorney's fees to a party injured by a lawyer's fraudulent or vexatious litigation tactics. See, e.g., Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991); 28 U.S.C. § 1927. There is no need for follow-on § 1692e litigation that increases the cost of resolving bona fide debtor-creditor disputes.

We further agree with the district court that M&K's pleadings had more than enough basis in fact to defeat as a matter of law Ms. Hemmingsen's claims that M&K engaged in conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," § 1692d, or used "unfair or unconscionable means to collect or attempt to collect any debt," § 1692f. That the state court granted Ms. Hemmingsen summary judgment is not evidence that M&K's aggressive pursuit of Discover's unpaid account in litigation violated statutory prohibitions targeted at abusive pre-litigation practices. As the Supreme Court commented in Heintz, 514 U.S. at 295-96, "we do not see how the fact that a lawsuit turns out ultimately to be unsuccessful could, by itself, make the bringing of it an 'action that cannot legally be taken.'"

### III. The State-Law Claims

The district court dismissed on the merits Ms. Hemmingsen's state law claims for malicious prosecution, abuse of process, and violation of Minn. Stat. § 418.071,

which provides that an attorney "guilty of any deceit or collusion . . . with intent to deceive the court or any party . . . shall forfeit to the party injured treble damages, to be recovered in a civil action." Ms. Hemmingsen appeals only the dismissal of this statutory claim, arguing the district court erred in granting summary judgment because she introduced sufficient evidence that M&K deceitfully continued a baseless action knowing its client lacked supporting evidence and filed a summary judgment motion "that contained patently false statements and misrepresentations in an effort to deceive Hemmingsen, her attorneys and the state court."

As we have explained, Ms. Hemmingsen failed to submit sufficient evidence of intentional fraud and deceit to survive summary judgment on the merits. But this claim suffers from another fatal flaw. First enacted in 1885 when the Minnesota Legislature adopted much of the New York Penal Code, § 418.071 has been seldom interpreted and applied. See Baker v. Ploetz, 616 N.W. 2d 263, 269-73 (Minn. 2000) (concluding the statute applies only to attorney fraud committed in a judicial proceeding). If an attorney is guilty of deceit or collusion in a lawsuit, the statute "does not create a new cause of action" but allows treble "the direct actual damages suffered by the [injured] party rather than some consequential indirect expenditures for attorney's fees and expenses in some other lawsuit." Smith v. Chaffee, 232 N.W. 515, 517 (Minn. 1930); accord Love v. Anderson, 61 N.W.2d 419, 422 (Minn. 1953).

These decisions strongly suggest that a state law claim of attorney deceit must be raised in the proceeding where the deceit allegedly occurred, except in cases where the deceit could not have been discovered at that time, such as Rucker v. Schmidt, 794 N.W.2d 114, 115-16 (Minn. 2011). That is the practice under a more recent statute, Minn. Stat. § 549.211, which authorizes the award of monetary sanctions for vexatious attorney conduct in civil actions, which could potentially be trebled under § 481.071. See Glynn's N.E. Elec., Inc. v. Slattengren, 2001 WL 826868, at *3 (Minn. App. 2001); Winnick v. Chisago Cnty. Bd. of Comm'rs, 389 N.W. 2d 546,

548-49 (Minn. App. 1986).  Here, Ms. Hemmingsen included a prayer for an award of attorney's fees in the collection action.  The state court did not impose this sanction.  The district court properly declined to second-guess the state court's evaluation of M&K's litigation conduct by granting the same relief under § 481.071 in a collateral action.  See Smithrud v. City of Mpls., 2011 WL 2682954, at *6-7 (D. Minn.), adopted, 2011 WL 2682800 (D. Minn. 2011), rev'd in part on other grounds, No. 11-2685 (8th Cir. Feb. 27, 2012);  Resler v. Messerli & Kramer, P.A., 2003 WL 193498, at *3 (D. Minn. 2003).

For the foregoing reasons, the judgment of the district court is affirmed.

_____